COAST LAW GROUP, LLP
MARCO A. GONZALEZ (SBN 190832)
LIVIA BORAK BEAUDIN (SBN 259434)
AMY C. JOHNSGARD (SBN 279795)
1140 South Coast Highway 101
Encinitas, CA 92024
Ph: (760) 942-8505
Fx: (760) 942-8515
email: marco@coastlawgroup.com

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

COASTAL ENVIRONMENTAL RIGHTS FOUNDATION,
a non-profit corporation,

          Plaintiff,

   v.

NAPLES RESTAURANT GROUP, LLC, a California Limited Liability Company;
JOHN MORRIS, an individual,

        Defendants.

Civil Case No.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**

**(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq*.)**

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

Coastal Environmental Rights Foundation, ("CERF" or "Plaintiff"), by and through its counsel, hereby alleges:

## I.  JURISDICTION AND VENUE

1.      This is a civil suit brought under the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"). *See* 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to 33 U.S.C. § 1365(a)(1) and 28 U.S.C. §§ 1331 and 2201.

2.      On or about November 5, 2015, Plaintiff issued a 60-day notice letter ("First Notice Letter") to Defendant John Morris, Action Sports Kids Foundation, and the City of Long Beach regarding Defendant's violations of the Clean Water Act.

3.      Plaintiff also sent the First Notice Letter to the registered agent for Defendant, the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the California State Water Resources Control Board ("State Board"), and the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board") as required by 40 C.F.R. § 135.2(a)(1) and 33 U.S.C. § 1365(b)(1)(A).

4.      Plaintiff issued a second 60-day notice letter ("Second Notice Letter") on or about June 29, 2021. The Second Notice Letter was sent to Defendant John Morris, Defendant Naples Restaurant Group, LLC, the Port and City of Long Beach, and Defendant Children Today. The Second Notice Letter is attached hereto as Exhibit A and incorporated herein by reference.

5.      Plaintiff also sent the Second Notice letter to the EPA, the Acting Administrator of EPA Region IX, the State Board, and the Regional Board as required by 40 C.F.R. § 135.2(a)(1) and 33 U.S.C. § 1365(b)(1)(A).

6.      More than sixty (60) days have passed since the First and Second Notice Letters were served on Defendants and the State and Federal agencies. Plaintiff is informed and believes, and thereon alleges, that neither the EPA nor the State of

California has commenced or is diligently prosecuting an action to redress the violations alleged in the Notice Letters and in this Complaint. *See* 33 U.S.C. § 1365(b)(1)(B). This action is not barred by any prior administrative penalty under Section 309(g) of the CWA. 33 U.S.C. § 1319(g).

7.    Venue is proper in the Central District of California pursuant to 33 U.S.C. § 1365(c)(1) because the source of the violations is located within this judicial district.

## II.    **INTRODUCTION**

8.    Every year since 2011, Defendants have organized and sponsored the July 3rd Big Bang on the Bay event, which includes a fireworks show from a barge in Alamitos Bay.

9.    Plaintiff seeks relief for Defendants' substantive and procedural violations of the Clean Water Act resulting from their unlawful discharge of pollutants into Alamitos Bay.

10.    Specifically, Defendants have discharged and continue to discharge fireworks debris and pollution into Alamitos Bay and the Pacific Ocean (collectively "Receiving Waters") without a permit, in violation of the express terms and conditions of the Clean Water Act, 33 U.S.C. §§ 1301, 1342.

11.    Many species of waterbirds forage and roost at the Marina, including some classified as endangered, of special concern, or special animals. Two species listed by the State and federal governments as endangered and known to frequent Alamitos Bay are the California brown pelican and the California least tern.

12.    During the 2021 Big Bang on the Bay fireworks show, adjacent Snowy Egret and Western Gull nests were monitored and adults and chicks showed signs of stress as a result of the fireworks.

13.    Alamitos Bay provides habitat for benthic infauna and bottom-feeding and resident soft bottom-dwelling fish. The Bay is also home to clam beds, burrowing anemones, octopus, and California horn snail.

14.    The Bay's water column habitat supports plankton small enough to be

suspended in the water column and fish eggs and larvae. Common water column fish species in Alamitos Bay include northern anchovy, topsmelt, queenfish, and white croaker.

15.    Over 40 different fish species have been found in Alamitos Bay, and bottlenose dolphins and gray whales are occasionally found in the Bay's entrance channel or adjacent San Gabriel River mouth. California sea lions and harbor seals also occasionally enter Alamitos Bay.

16.    Alamitos Bay supports a variety of Beneficial Uses under the Clean Water Act, including: industrial service supply, navigation, commercial and sport fishing, estuarine habitat, marine habitat, wildlife habitat, rare, threatened or endangered species, shellfish harvesting, and wetland habitat.

17.    Defendants' discharge of pollutants causes and/or contributes to the impairment of Alamitos Bay and compromises or destroys its Beneficial Uses.

18.    With every sparkle and flash of color from fireworks, pollutants in the form of debris, fuses, toxic metals and chemical residue fall into the waters below.

19.    When an individual firework is detonated, the chemical constituents burn at high temperatures and are scattered by the burst charge which separates them from the fireworks casing and internal shell components. A combustion residue is produced in the form of smoke, airborne particulates, chemical pollutants, and debris including paper, cardboard, wires, and fuses. This combustion residue falls into surface waters.

20.    Residual firework pollutant waste discharged into surface waters constitutes discharge of a pollutant from a point source within the meaning of the Clean Water Act. Therefore, a discharger must obtain a Permit before residual firework pollutant waste can be lawfully discharged.

21.    Typical firework constituents include, but are not limited to, aluminum, antimony, barium, carbon, calcium, chlorine, cesium, copper, iron, potassium, lithium, magnesium, oxidizers including nitrates, chlorates and perchlorates, phosphorus, sodium sulfur, strontium, titanium, and zinc. Defective shells or "duds" will on occasion fall

1   directly into the water. Duds contain 100 percent concentration of these chemical
2   constituents, which can leak into receiving waters with little dilution.

3          22.     Many of the enumerated pollutants are particularly harmful to aquatic
4   wildlife and humans alike. Firework discharges can directly impact multiple beneficial
5   uses of receiving waters. Released copper can cause toxicity for organisms living on the
6   bay bottom while fireworks debris can cause a condition of nuisance for people
7   participating in recreational activities.

8          23.     In San Diego County, SeaWorld's Mission Bay sediment monitoring data
9   showed enrichment of numerous metals when compared to reference sites. The data
10  indicates pollutants accumulate over time within the fireworks fallout area when
11  compared to reference sites not impacted by the events.

12         24.     Perchlorate, a particularly dangerous firework constituent, is exceedingly
13  mobile in water and can persist for many decades under typical ground and surface water
14  conditions. Perchlorate can also greatly impact human health and is regulated as a
15  drinking water contaminant. Recent studies have confirmed fireworks displays are a
16  problematic source of perchlorate water contamination.

17         25.     The Clean Water Act prohibits the discharge of any pollutant to waters of
18  the United States, except in compliance with a National Pollutant Discharge Elimination
19  System ("NPDES") permit. Because residual firework pollutant wastes constitute
20  discharge of a pollutant from a point source within the meaning of the Clean Water Act,
21  an NPDES permit is required when fireworks are detonated over water.

22         26.     The polluted discharges from Defendants' fireworks shows harm the special
23  aesthetic and recreational significance that the Receiving Waters have for people in the
24  surrounding communities, including Plaintiff's members. The public's, including CERF's
25  members', use of the Receiving Waters for water contact recreation exposes people to
26  toxic metals, carcinogenic chemicals, and other contaminants resulting from Defendants'
27  discharges. Non-contact recreational and aesthetic opportunities, such as wildlife
28  observation and aesthetic enjoyment, are also impaired by polluted discharges, as such

discharges cause or contribute to ecosystem and food web degradation.

### III.   PARTIES

27.   Defendant Naples Restaurant Group, LLC, ("Naples") is an active California limited liability company and is the owner of restaurant Boathouse on the Bay, located at 190 N Marina Dr, Long Beach, CA 90803. Naples is a fiscal sponsor and organizer of the annual Big Bang on the Bay fireworks event.

28.   Defendant John Morris ("Morris") is Naples' managing member and primary organizer of the annual Big Bang on the Bay fireworks event.

29.   Plaintiff CERF is a non-profit public benefit corporation organized under the laws of the State of California with its office is located in Encinitas, California. CERF was founded by surfers in North San Diego County and is active throughout California's coastal communities. CERF was established to advocate for the protection and enhancement of coastal natural resources and the quality of life for coastal residents. One of CERF's primary areas of advocacy is water quality protection and enhancement.

30.   Many of Plaintiff's members live and/or recreate in and around the Receiving Waters. Plaintiff's members use and enjoy the Receiving Waters to fish, sail, boat, kayak, paddle board, surf, swim, hike, view wildlife and scenery, and engage in scientific studies, among other activities.

31.   Defendants' failure to comply with the procedural and substantive requirements of the CWA results in discharges of pollutants into the Receiving Waters. Defendants' unpermitted pollutant discharges degrade water quality and harm aquatic life in the Receiving Waters and thus impair Plaintiff's members' use and enjoyment of those waters.

32.   Defendants' violations of the CWA are ongoing and continuous. The Big Bang on the Bay has occurred annually since 2011, with the exception of 2020 due to the Covid-19 pandemic. Thus, the interests of Plaintiff's members have been and will continue to be adversely affected by Defendants' failure to comply with the CWA.

33.   CERF's members donate their time and resources to protect, enhance, and

assist in the preservation of coastal and inland waterbodies, including Alamitos Bay.

34.  At least two of CERF's members live near Alamitos Bay and recreate in or around the Bay. They regularly use Alamitos Bay for recreational and aesthetic purposes, including viewing wildlife. These members intend to use Alamitos Bay and the Pacific Ocean for these activities again in the future. These members are aware of Defendants' unlawful discharges of pollutants to the Receiving Waters and their use and enjoyment of the Receiving Waters is lessened due to such knowledge.

35.  The relief sought herein will redress the harms to Plaintiff's members caused by Defendants' activities. Continuing commission of the acts and omissions alleged herein will irreparably harm Plaintiff's members, for which it has no other plain, speedy, or adequate remedy at law.

36.  An actual controversy exists as to the rights and other legal relations between Defendants and Plaintiff.

## IV.    LEGAL BACKGROUND

### A.    The Clean Water Act.

37.  Section 301(a) of the Act, 33 U.S.C.A. § 1311(a), prohibits the discharge of pollutants from a point source into navigable waters of the United States, unless in compliance with various enumerated sections of the Act. Among other things, § 301(a) prohibits such discharges not authorized by or in violation of the terms of an NPDES permit pursuant to Section 402 of the Act, 33 U.S.C.A. § 1342.

38.  "Waters of the United States" are defined as "navigable waters" and "all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including waters which are subject to the ebb and flow of the tide." 33 U.S.C. § 1362(7); 40 C.F.R. § 122.2.

39.  The "discharge of a pollutant" means, among other things, "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

40.  The EPA interprets waters of the United States to include not only traditionally navigable waters, but also other waters, including waters tributary to

navigable waters, wetlands adjacent to navigable waters, and intermittent streams that could affect interstate commerce. *See* 40 C.F.R. § 120.2.

41.　The CWA confers jurisdiction over waters that are tributaries to traditionally navigable waters where the water at issue has a significant nexus to the navigable water.

42.　The term "pollutant" means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water. 33 U.S.C. §1362(6).

43.　The term "point source" means any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. 33 U.S.C. §1362(14).

**B.　The Discharge of Fireworks Over Water.**

44.　California is a state authorized by the EPA to issue NPDES permits. In California, the State Board is charged with regulating pollutants to protect California's water resources. Cal. Water Code § 13001.

45.　In California, two of the nine Regional Water Quality Control Boards ("RWQCB") have issued general NPDES permits to regulate the discharge of fireworks over water.

46.　The Region 9, San Diego RWQCB Fireworks General Permit was adopted on May 11, 2011. The Region 9 Permit states:

"The Clean Water Act (CWA), at section 301(a), broadly prohibits the discharge of any pollutant to waters of the United States, except in compliance with a National Pollutant Discharge Elimination System (NPDES) permit. Residual firework pollutant waste discharged into surface waters constitutes discharge of a pollutant from a point source within the meaning of the CWA. Therefore, coverage under an NPDES permit is required before residual firework pollutant waste can be lawfully

discharged." (Order No. R9-2011-0022, p. 6 [I. Discharge Information]).

47.    The Region 2, San Francisco Bay RWQCB Fireworks General Permit became effective on August 1, 2020.

48.    Region 4, the Regional Board with jurisdiction over Defendants' discharges, has not issued a general NPDES for the discharge of fireworks

49.    The Defendants have not been granted an individual NPDES permit for their discharge of pollutants from the Big Bang on the Bay fireworks event.

## V.    FACTUAL BACKGROUND

### A.    Fireworks Discharges.

50.    Professional pyrotechnic devices used in fireworks displays can be grouped into three general categories: 1) aerial shells (paper and cardboard spheres or cylinders filled with pyrotechnic materials), 2) low-level comet and multi-shot devices such as roman candles, and 3) set piece displays mounted on the ground.

51.    Typical firework constituents include, but are not limited to, aluminum, antimony, barium, carbon, calcium, chlorine, cesium, copper, iron, potassium, lithium, magnesium, oxidizers including nitrates, chlorates and perchlorates, phosphorus, sodium sulfur, strontium, titanium, and zinc.

52.    The chemical constituents burn at high temperatures when the firework is detonated which promotes incineration. The chemical constituents within the fireworks are scattered by the burst charge which separates them from the fireworks casing and internal shell components. A firework combustion residue is produced in the form of smoke, airborne particulates, chemical pollutants, and debris including paper, cardboard, wires, and fuses. This combustion residue can fall into surface waters. In addition, un-ignited pyrotechnic material including duds and misfires can also fall into surface waters. The receiving water fallout area affected by the fireworks residue can vary depending on wind speed and direction, size of the shells, the angle of mortar placement, the type and height of firework explosions and other environmental factors. Once the fireworks residue enters a water body it can be transported to waters and shorelines outside the

fallout area due to wind shear and tidal effects.

53.     For years, CERF volunteers visually monitored the La Jolla Cove 4th of July fireworks display conducted on land with discharges over water. The La Jolla Cove fireworks event sponsors routinely claimed minimal or no debris entered the adjacent waters as a result of the fireworks show.

54.     CERF volunteers found the La Jolla Cove fireworks show resulted in substantial debris, such as cardboard, wires, fuses, string, and plastics falling onto the adjacent cliffs and into the water. CERF volunteers were unable to collect debris from the water in the dark, but picked up significant quantities of debris from the adjacent cliffs, much of which would be swept into the water with rising tides. Photos of the launch area and of the debris collected by CERF volunteers after the July 4, 2011 fireworks event are reproduced below.

***La Jolla Cove Fireworks Launch Area***



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







*Debris Collected by CERF volunteers*



**B.      Big Bang on the Bay.**

55.      The Big Bang on the Bay is an annual event comprised of a street fair with live music, a fireworks display, catered food, and alcohol service. In years past, including 2021, the event included aircraft flyovers and skydivers. It has historically been held on July 3rd in honor of Independence Day with the fireworks show as the main attraction.

56.      The 30-minute fireworks show is conducted from a barge in Alamitos Bay to allow fireworks debris and residue to fall into the Bay.

57.      Alamitos Bay is a navigable water. The barge from which the Big Bang on the Bay fireworks are detonated is towed into Alamitos Bay by a tugboat and temporarily anchored for the event.

58.      Since 2011, Defendants have sponsored and organized the Big Bang on the Bay every July, except for July 2020 due to the Covid-19 pandemic.

59.      The Boathouse on the Bay website typically sells event tickets and promotes the event. Defendant Naples is the sponsoring organization listed on the City of Long Beach Public Fireworks Display permit application.

60.      In response to CERF's First Notice Letter and as a result of an agreement between Defendant Morris and CERF, the Big Bang on the Bay has monitored its discharge of fireworks since 2015.

61.      Defendants' sampling report has noted firework debris collected in the water after the event includes used cardboard, plastic firework cylinders, paper bound in zip ties, and a variety of fireworks wrapping paper. This debris is consistent with the debris collected by CERF volunteers after the La Jolla Cove fireworks event.

62.      In the San Diego region, dischargers enrolled in the General Fireworks Permit must report the dry and wet weight of debris collected from the firing range after the event. Most events report collecting between 8 and 700 pounds of dry debris post fireworks shows.

63.      The 2021 event was comprised of more than 735 fireworks.

64.      Defendants' 2021 sampling report states that .5 pounds of plastic and water-

saturated cardboard was recovered by their consultants, though none of it appeared event related. Therefore, most of the 2021 firework debris remains within Alamitos Bay.

65.    Similar results were reported in prior years where sampling was conducted. Therefore, most of the fireworks debris from every Big Bang on the Bay event remained within Alamitos Bay.

66.    The fireworks fallout area is a radius of approximately 600 feet. A figure showing the location of the barge for the 2021 Big Bang on the Bay Event was included in Defendants' sampling report and is reproduced below.



Figure 3. 2021 Alamitos Bay Fireworks Sampling Locations

**C.     The Los Angeles Regional Board Has Not Issued a Permit for the Big Bang on the Bay.**

67.     In response to CERF's First Notice Letter, the Los Angeles Regional Board issued a California Water Code Section 13267 investigative order. The Board issued investigative orders in 2017 and 2018, requesting water quality monitoring data.

68.     The Regional Board has not taken any subsequent action toward establishing a general NPDES permit for fireworks discharges or issuing individual NPDES permits for fireworks discharges.

69.     The Los Angeles Regional Board has not issued an NPDES to Defendants for their discharge of fireworks for the Big Bang on the Bay. On information and belief, Defendants have not applied for an NPDES permit.

**V.     CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**

**Discharges of Pollutants Without an NPDES Permit.**

**33 U.S.C. §§ 1311(a), 1342**

70.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

71.     The discharge of pollutants from a point source without an NPDES permit is a violation of the Clean Water Act. Defendant's ongoing failure to obtain an NPDES permit for its annual Big Bang on the Bay discharges is an ongoing violation of the CWA. 33 U.S.C. § 1311(a), § 1342.

72.      Defendants violated and will continue to violate the Clean Water Act each and every time unauthorized discharges occur as a result of the Big Ban on the Bay fireworks show.

73.     Defendants have been in violation of the Clean Water Act since July 3, 2011 to the present. Defendants' violations are ongoing and continuous.

74.     Each and every violation of the Clean Water Act is a separate and distinct violation of 33 U.S.C. § 1311(a) and § 1342. By committing the acts and omissions

alleged above, Defendants are subject to an assessment of civil penalties for each and every violation of the CWA occurring from June 29, 2016 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365; 40 C.F.R. § 19.4.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

**VI.**     **RELIEF REQUESTED**

75.   Plaintiff respectfully requests that this Court enter judgment providing the following relief:

a.   Declare the Defendants to have violated and to be in violation of the Clean Water Act;

b.   Issue an injunction to enjoin Defendants from discharging pollutants unless and until they obtain an NPDES permit;

c.   Order Defendants to pay civil monetary penalties for each violation of the CWA at $56,460.00 per day per violation for violations that occurred after November 2, 2015, as permitted by CWA Section 309(d), 33 U.S.C. § 1319(d) and Adjustment of Civil Monetary Penalties for Inflation, and 40 C.F.R. § 19.4.

d.   Order Defendants to take appropriate actions to restore the quality of United States waters impaired by their unlawful discharge of pollutants;

e.   Award Plaintiff its reasonable costs of suit, including attorney, witness, expert, and consultant fees, as permitted by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d); and

f.   Any other relief as this Court may deem appropriate.

Dated: November 23, 2021

Respectfully submitted,

COAST LAW GROUP LLP
By: s/Livia B. Beaudin
LIVIA B. BEAUDIN
Attorney for Plaintiff
COASTAL ENVIRONMENTAL
RIGHTS FOUNDATION
E-mail: livia@coastlawgroup.com