UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COASTAL ENVIRONMENTAL RIGHTS FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>NAPLES RESTAURANT GROUP, LLC; JOHN MORRIS,<br><br>Defendants. | Case No. 2:21-cv-09172-MCS-JEM<br><br>**BENCH VERDICT** |

The Court conducted a two-day bench trial on Defendants' liability under the Clean Water Act ("CWA"), (1st Mins., ECF No. 96; 2d Mins., ECF No. 98), after which Defendants moved for judgment based on partial findings, (Rule 52(c) Mot., ECF No. 102). The Court denied the motion and ordered the parties to submit closing briefs, which are now before the Court. (Order Re: Rule 52(c) Mot., ECF No. 109; Defs.' Trial Br., ECF No. 110; Pl.'s Trial Br., ECF No. 111.) The Court specifically invited the parties to address whether Plaintiff had proven continuous and ongoing violations of the CWA. (Order Re: Rule 52(c) Mot. 20.)

///

1

## I. LEGAL STANDARD

Under Rule 52(c), "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Courts have the authority to resolve disputed issues of fact on a motion for judgment on partial findings. *See* Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, shall not be set aside unless clearly erroneous . . . ."). Unlike in Rule 50(a) motions, a district court is not required to draw any inferences in favor of the non-moving party and "may make findings in accordance with its own view of the evidence." *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006); *see also* Fed. R. Civ. P. 52(c) advisory committee's note to 2007 amendment ("The standards that govern judgment as a matter of law in a jury case have no bearing on a decision under Rule 52(c)."). "Under Rule 52(c), the district court weighs the evidence and resolves the case or claim based on a preponderance of the evidence." *United States v. Freitas*, No. 18CV1259-GPC(JLB), 2020 WL 13539104, at *1 (S.D. Cal. Mar. 4, 2020) (citing *Int'l Union of Operating Eng'rs, Local Union 103 v. Ind. Constr. Corp.*, 13 F.3d 253, 257 (7th Cir. 1994)). A court may enter judgment pursuant to Rule 52(c) sua sponte. *See Granite States Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1031 (9th Cir. 1996) ("Rule 52(c) . . . authorizes the court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence." (internal quotation marks omitted)); *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 272 (3d Cir. 2010) (citing, inter alia, *Granite States*, 76 F.3d at 1031)),

## II. FINDINGS OF FACT

The Court incorporates by reference the findings of fact issued in its prior order denying Defendants' Rule 52(c) motion. (Order Re: Rule 52(c) Mot. 2–7.) In brief, Plaintiff is a nonprofit environmental organization established to advocate for the protection of California's coasts and residents, with water quality a primary area of

concern for Plaintiff. (Am. Stip. of Facts ¶¶ 27–29, ECF No. 88.) Every year since 2011, apart from 2020, Defendants have played a role in organizing the Big Bang on the Bay, an annual event "historically . . . held on July 3rd in honor of Independence Day with the fireworks show as the main attraction." (*Id.* ¶¶ 14–15.) As part of the Big Bang on the Bay event, Defendants hire pyrotechnic operators to launch hundreds of fireworks from a barge positioned in Alamitos Bay, a navigable water within the meaning of the CWA. (*Id.* ¶¶ 7, 18); 33 U.S.C. § 1362(7); *see also* 40 C.F.R. § 120.2.

At trial, Plaintiff proffered documentary, photo, video, and testimonial evidence in support of its CWA claim against Defendants. Only the 2016 and 2022 shows were shot on photo and video. (*See, e.g.*, Trial Exs. 53, 81.) Documentary evidence included reports by Pi Environmental, an environmental consulting firm retained to assess the water quality impact of Defendants' fireworks show on Alamitos Bay, (*e.g.*, Mardian Decl. ¶¶ 1, 10–24, ECF No. 50; Trial Ex. 40), and the investigative reports by the Los Angeles Regional Water Quality Control Board, (Trial Exs. 65–66). Gordana Kajer, Joseph Geever, and Christopher Bajan gave eyewitness testimony as to the 2022 show.

During the 2022 show, a GoPro camera positioned on the deck of the barge recorded the event. (Daly Decl. ¶ 2, 4, 6, ECF No. 92.) While nearly all of the post-combustion fireworks materials fell out of view of the camera, the camera did capture a low breaking firework occurring within 10 feet above the mortar and ejecting fireworks-related stars and debris over the barge wall and into Alamitos Bay. (Trial Ex. 81.o.) In a fireworks show, a low break occurs when an aerial shell explodes below its intended height. (2/1/23 Trial Tr. 69:7–11, ECF No. 107.) Depending on the quality of the fireworks and the manufacturer, a show of 300 to 400 fireworks will "probably" produce one low break. (*Id.* at 94:16–21.) Plaintiff proffered no evidence of any low break occurring in any other year.

### III. CONCLUSIONS OF LAW

#### A. Violation of the CWA

"The CWA prohibits the discharge of any pollutant from a point source into

navigable waters of the United States without an NPDES permit." *N. Plains Res. Council v. Fid. Expl. & Dev. Co.*, 325 F.3d 1155, 1160 (9th Cir. 2003) (citing 33 U.S.C. §§ 1311(a), 1342). Under the CWA, a discharge is "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12)(A). A pollutant is "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." *Id.* § 1362(6). A point source is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." *Id.* § 1362(14).

As the Court already held, Plaintiff has proven by preponderance of the evidence that Defendants discharged pollutants during the 2022 fireworks show based on a documented low break of a red star occurring "within just 10 feet above the mortar." (Order Re: Rule 52(c) Mot. 11.) The Court further found that Defendants committed this discharge of pollutants from a point source: the mortars on the deck of the barge. (*Id.* at 14–15.) Based on these findings and the parties' pretrial stipulations, Plaintiff has proven that Defendants violated the CWA during the 2022 fireworks show. *N. Plains*, 325 F.3d at 1160; (Am. Stip. of Facts ¶¶ 7, 20 (stipulating that "Alamitos Bay is a navigable water" and that "Defendants did not have an approved NPDES Permit")).

As to the 2017, 2017, 2018, 2019, or 2021 shows, the evidence proffered was insufficient to establish a discharge of any fireworks-related pollutants. (*Id.* at 11–14.) Thus, Plaintiff has not proven a CWA violation for any fireworks show other than the one held in 2022. *N. Plains*, 325 F.3d at 1160.

### B. Continuous and Ongoing Violations

"[A] citizen plaintiff may prove ongoing violations 'either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing

4

evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations.'" *Sierra Club v. Union Oil Co. of Cal.*, 853 F.2d 667, 671 (9th Cir. 1988) (quoting *Chesapeake Bay Found. v. Gwaltney*, 844 F.2d 170, 171–72 (4th Cir. 1988), and adopting its test). "Intermittent or sporadic violations do not cease to be ongoing until the date when there is *no real likelihood of repetition.*" *Id.* (internal quotation marks omitted). To sustain a CWA claim, the plaintiff must eventually prove as a matter of fact that the alleged violations are continuous and ongoing. *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 999 (9th Cir. 2000).

### 1.  Post-Complaint Violations

A single post-complaint violation resulting from a rare, unexpected occurrence fails to demonstrate an ongoing violation under the first prong of *Gwaltney*. *Allen Cnty. Citizens for Env't, Inc. v. BP Oil Co.*, 762 F. Supp. 733, 744–46 (N.D. Ohio 1991), *aff'd*, 966 F.2d 1451, 1992 WL 138410 (6th Cir. 1992) (unpublished table decision); *see also Am. Canoe Ass'n v. Murphy Farms*, 412 F.3d 536, 539 n.* (4th Cir. 2005) (questioning "whether a *single* post-complaint violation can constitute '*violations* that continue on or after the date the complaint is filed'" (emphases in original)). Plaintiff is unable to point to—and the Court is not aware of—any case to the contrary. The Court shares in the Fourth Circuit's doubt that just one post-complaint violation satisfies *Gwaltney*, which, under a strict reading of its first prong, requires at least two CWA violations. *Sierra Club*, 853 F.2d at 671 (requiring the plaintiff to demonstrate "violation*s* that continue on or after the date the complaint is filed" (emphasis added) (internal quotation marks omitted)). And relevant here, the district court in *Allen County Citizens* considered whether evidence of a single exceedance of permitted ammonia discharge limitations—i.e., CWA violations—occurring after the filing of the complaint raised a genuine issue of material fact under *Gwaltney*. *Allen County Citizens*, 762 F. Supp. at 744. That court held in pertinent part that "evidence of one exceedance is insufficient as a matter of law to raise a genuine issue of material fact as to whether

there is a *continuing* violation." *Id.* In an unpublished opinion, the Sixth Circuit found "no error in the district court's judgment" and adopted the lower court's reasoning. *Allen County Citizens*, 1992 WL 138410, at *2.

    While the Court does not hold that a single violation is insufficient as a matter of law to prove continuous and ongoing violations under *Gwaltney*, the facts established during trial support the Court's final disposition nonetheless. As discussed in greater detail below, Plaintiff has proffered insufficient evidence to prove that Defendants' violations are likely to continue. The 2022 point source discharge of pollutants occurred not by dint of the ordinary operation of a firework but from an unexpected, malfunctioning firework breaking exceptionally low—just 10 feet above the mortar. (2/1/23 Trial Tr. 94:21–95:4, 96:9–19.) Plaintiff has failed to proffer any evidence explaining, for example, how or why a misfire could break low at 10 feet as opposed to a higher altitude where there may not be a discharge into navigable waters. Plaintiff also failed to introduce evidence concerning whether the brand of fireworks Defendants used is more or less susceptible to low breaks or other malfunctions. Given this paucity of affirmative evidence, the Court is not convinced that Plaintiff has carried its burden of satisfying the first prong of *Gwaltney*.

    2.    <u>Continuing Likelihood of Recurring Violations</u>

    Plaintiff has not demonstrated an adequate likelihood that a low break will recur during Defendants' anticipated future fireworks shows under the *Gwaltney*'s second prong. Dr. Steinberg testified that one low break will "probably" occur in a fireworks show involving 300 or 400 aerial shells, though a low break is nonetheless unexpected. (2/1/23 Trial 94:21–95:4, 96:9–16.) And even in the unlikely and unexpected event of an aerial shell breaking low, there is no guarantee that the firework will combust at an altitude sufficiently low to add burning stars into Alamitos Bay. (*Id.* at 94:19–22.) Dr. Steinberg also testified that he routinely conducts shows where no low breaks occur. (*Id.* at 96:17–19.) Such was the case during Defendants' 2016 show. (Trial Ex. 53.)

    Even assuming Defendants continue to hold their annual fireworks show, (2/1/23

Trial Tr. 59:9–14), there is no evidence in the record of the types of fireworks Defendants used, the chemical or mechanical properties of a firework making a low break more or less likely, or any demonstrable pattern suggesting that another low break will occur at a sufficiently low altitude. Plaintiff contends that because the "2022 event contained 844 aerial shells, future shows are likely to result in multiple low breaks." (Pl.'s Trial Br. 8.) This fact cuts against its position. That Plaintiff proffered only one low break out of 844 aerial shells only exemplifies Dr. Steinberg's opinion that none are expected to occur in any show, notwithstanding his testimony that one will probably occur in a show of 300 to 400 shells. (2/1/23 Trial Tr. 96:12–13.) Based on the facts in the record, low breaks occurring at altitudes low enough to discharge pollutants into receiving waters is the exception rather than the norm.

Accordingly, Plaintiff has not demonstrated the continuing likelihood that Defendants will violate the CWA. Because Plaintiff has failed to prove continuous and ongoing violations under either prong of *Gwaltney*, the Court further finds that Plaintiff has not proven its CWA claim.

///

## IV. CONCLUSION

Accordingly, Plaintiff's claim is dismissed without prejudice.[1] The Court directs the Clerk to enter judgment in favor of Defendants and close the case.

**IT IS SO ORDERED.**

Dated: April 20, 2023

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

---

[1] The Court notes that while the district court in *Allen County Citizens* framed the continuous and ongoing issue as jurisdictional, the Ninth Circuit has held that a citizen plaintiff "need not prove the allegations of ongoing noncompliance before jurisdiction attaches." *Sierra Club*, 853 F.3d at 669. Rather, *Gwaltney* is described as a pleading requirement under Federal Rule of Civil Procedure 11. *Id*. The Ninth Circuit clarified in *Southwest Marine* that a plaintiff must nonetheless factually prove continuous and ongoing violations by the end of trial. 236 F.3d at 989. Based on these binding authorities, the Court understands *Gwaltney* as a merits, rather than jurisdictional, question at this stage of proceedings. Whether properly understood as a jurisdictional or merits-based disposition after a trial, *Gwaltney* nonetheless militates dismissal without prejudice so Plaintiff can remain free to assert a CWA claim based on Defendants' 2022 violation and any future violations. *See Blackhawk Network Inc. v. SL Card Co. Inc.*, No. CV-21-00813-PHX-MTL, 2022 WL 1136633, at *1 (D. Ariz. Apr. 18, 2022) (collecting cases for the proposition that "dismissals for lack of subject matter jurisdiction . . . are ordinarily without prejudice").