JOSEPH A. WALSH II, State Bar No. 143694
joe.walsh@cwn-law.com
ANUSHA E. PILLAY, State Bar No. 270752
anusha.pillay@cwn-law.com
CAROLINE J. WILSON, State Bar No. 341286
caroline.wilson@cwn-law.com
COLLIER WALSH NAKAZAWA LLP
180 E. Ocean Blvd., Suite 500
Long Beach, California 90802
Telephone: (562) 317-3300
Facsimile: (562) 317-3399

Attorneys for NAPLES RESTAURANT
GROUP, LLC and JOHN MORRIS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COASTAL ENVIRONMENTAL RIGHTS FOUNDATION, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>NAPLES RESTAURANT GROUP, LLC, a California Limited Liability Company; JOHN MORRIS, an individual,<br><br>Defendants. | Case No. 2:21-cv-09172-MCS-JEM<br><br>**DEFENDANTS NAPLES RESTAURANT GROUP AND JOHN MORRIS' SUPPLEMENTAL RESPONSE BRIEF** |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTORY STATEMENT ........................................................................ 4

II. NAPLES INITIAL SUBMISSION CONFIRMS THAT IT HAS OBTAINED (AND PAID FOR) AND WILL CONTINUE TO MAINTAIN (AND PAY FOR) AN NPDES PERMIT FOR EVERY YEAR THAT IT HOSTS THE EVENT ........ 5

    A. Individual Permits Were Categorically Unavailable ............................... 5

    B. Naples Has Sought and Paid for an NPDES Permit for Every Year that the Permit Was Available in which Naples Hosted the Event ............... 6

    C. Naples Has Demonstrated *In Every Way Possible* that It Will Continue to Obtain and Pay for an NPDES Permit for Every Year that It Hosts the Event ........................................................................................................ 7

        1. The 2024 Event ............................................................................... 7

        2. The 2025 Event and Beyond ........................................................... 8

III. CERF's BRIEF ATTEMPTS TO ANSWER THE WRONG QUESTION ....... 9

    A. CERF Impermissibly Seeks to Adjudicate whether Naples Has or Will Comply with the Requirements of Each Permit .................................... 10

        1. CERF's Own Headings Demonstrate the Error in Its Focus ....... 10

        2. CERF's Case Selection is Baffling .............................................. 10

        3. CERF's Mootness Argument Relies upon *Compliance* Cases Rather than Cases Analyzing the Discharge of Pollutants without a Permit ............................................................................................ 11

        4. CERF's Assertion that This Case Cannot Be Moot Because Naples Defended Itself Is Preposterous ...................................... 13

IV. CONCLUSION ................................................................................................ 13

COLLIER WALSH NAKAZAWA LLP
180 E. Ocean Blvd, Suite 500
Long Beach, California 90802
Telephone (562) 317-3300

# TABLE OF AUTHORITIES

**CASES**                                                                                                         **Page(s)**

*Board of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195 (9th Cir. 2019) .................................................................................. 11

*City of Maui, Hawaii v. Hawaii Wildlife Fund*, 590 U.S. 165, 185 (2020) ............. 5

*Ecological Rts. Found. v. Pacific Lumber Co.*, 230 F.3d 1141 (9th Cir. 2000) .... 12

*Coastal Env't Rights Found. v. Naples Rest. Grp., LLC*, 115 F.4th 1217 ............. 13

*F.B.I. V. Fikre*, 601 U.S. 234 (2024) .......................................................... 10, 12, 13

*Friends of the Earth Inc. v. Laidlaw Environmental Services (TOC) Inc.*, 528 U.S. 167 (2000) .................................................................................................. 11, 13

*Knox v. Service Employees Intern. Union, Local 1000*, 567 U.S. 298 (2012) ....... 11

*LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150 (9th Cir. 2006) ..................................................................................................................... 11

*Lowry v. Barnhart*, 329 F.3d 1019, (9th Cir. 2003) ................................................. 9

*Nat. Res. Def. Council v. Cnty. of Los Angeles*, 840 F.3d 1098    (9th Cir. 2016) .................................................................................................................... 11, 12

*Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 791 (2007) ........................................................................................................... 10

*San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153 ........................... 12

**OTHER**

(*Federal*) *Ninth Circuit Civil Appellate Practice*, Nelson, Goeltz & Watts (The Rutter Group 2023), §§ 215, 255 ............................................................................. 9

## I. INTRODUCTORY STATEMENT

In a fit of intellectual narcissism, CERF filed a 23-page Response Brief ("CERF Response") (ECF No. 139), essentially ignoring this Court's prompt (whether Defendants' alleged violations are reasonably expected to occur), and instead discussing a myriad of unrelated cases, including a "no fly list" case, a "busing" case, and other cases that investigate a party's *compliance* with various requirements.

When CERF finally addresses whether Naples' alleged violation (*i.e.* the failure to obtain future permits—not compliance with that permit) is reasonably expected to occur, CERF fumbles the exercise, steadfastly maintaining that Naples should have obtained an individual permit that was unobtainable on this record. CERF also makes one more weak, although unsuccessful, attempt to create the same "payment controversy" that it belatedly raised in its Petition for Rehearing on appeal, but which has since been resolved against CERF on this record.

At its core, CERF's response focuses on attempting to demonstrate that Naples will violate the terms of its permit in the future, an argument that is irrelevant given the single cause of action for discharge of a pollutant without an NPDES permit contained in CERF's complaint. CERF seeks to effectuate this strategy by seeking to "pad a record" that it could not establish at trial. A prime example of this strategy is its citation to materials in its own request for judicial notice ("RJN"), thereby hoping to (belatedly) demonstrate a "discharge" and thus presumably a violation in 2023. Because Naples had obtained a permit for that year and every other year that a permit was available in which it hosted an event, claims of a discharge (or a potential violation) are irrelevant.

The Court's prompt requested that each party state its position on whether "it is absolutely clear" that Defendant's alleged violations of the Clean Water Act (the "Act") "could not reasonably be expected to occur." (ECF No. 138, at p. 2.) The only alleged potential "violation" that is conceivably relevant given the single cause of action raised in CERF's complaint is Naples' failure to obtain future NPDES permits.

But this record, as thoroughly analyzed in Naples initial submission filed on June 24, 2025 ("Initial Submission") confirms without a doubt that Naples has and will continue to obtain an NPDES permit for every event it hosts. In short, what else can Naples be required to show?

## II. NAPLES INITIAL SUBMISSION CONFIRMS THAT IT HAS OBTAINED (AND PAID FOR) AND WILL CONTINUE TO MAINTAIN (AND PAY FOR) AN NPDES PERMIT FOR EVERY YEAR THAT IT HOSTS THE EVENT

Those minimal portions of CERF's response that actually address the Court's prompt raise two arguments, both unavailing. First CERF argues that Naples failed to obtain an individual permit prior to the years the NPDES permit was available. As the undisputed record demonstrates, and as discussed at the Status Conference on June 2, 2025, individual permits were *never* available. Second, CERF tries unsuccessfully to recreate a factual controversy regarding Naples' payment for the 2023 permit. As Naples' initial submission confirms, all required payments were made and CERF's argument must therefore be rejected.

### A. Individual Permits Were Categorically Unavailable

In its initial submission, Naples confirmed that no general NPDES permit was available at the time CERF filed its complaint. (Initial Submission, 6:1-5.) CERF does not dispute the point. (CERF Response, 9:3-4.) Therefore, CERF's only argument regarding Naples' "failure" to obtain a permit is that Naples failed to obtain an individual permit. (CERF Response, 8:13-9:15.) As Naples' initial submission confirms, however, *no individual permit was **ever** available.* (Initial Submission, 6:20-8:14.)

Rather than consult the record, CERF instead relies upon vague statements from other courts that "it is undisputed that the EPA may 'grant individual permits.'" (CERF Response, 8:17-19, citing *City of Maui, Hawaii v. Hawaii Wildlife Fund*, 590 U.S. 165, 185 (2020)). Perhaps that is so, but this Board would not issue such a permit

to Naples.

In its initial submission, Naples meticulously analyzed the entire record concerning the availability of individual permits. That record undeniably establishes that the Board would *not* issue such a permit, a fact that Naples' counsel repeatedly confirmed. (Initial Submission, 6:20-8:14.) The record confirms not only that the Board had never issued an NPDES permit (Stipulation of Fact, 12; **2-ER-141**), but also that it would never issue such a permit during the years encompassed by this record.

Accordingly, CERF's assertion that "There is no record evidence—none—to suggest that Naples was prevented from applying for an individual permit to comply with the Clean Water Act" (CERF Response, 7:13-15) not only ignores the record but calls into question the integrity of CERF's Response.

**B.   Naples Has Sought and Paid for an NPDES Permit for Every Year that the Permit Was Available in which Naples Hosted the Event**

CERF's only other argument regarding Naples' potential noncompliance with its obligation to obtain a permit is CERF's unfounded insinuation that Naples failed to pay for its 2023 NPDES permit. In various (often snide) references, CERF asserts that "Naples arguably failed to pay for its permit the first year" (CERF Response, 20:8-9), and that "the sole remedial measure that Naples has purportedly taken is …. to simply obtain (not necessarily pay or comply with but just obtain, but just obtain) a general NPDES permit." (CERF Response, 21:1-3).

In fact, CERF goes so far as to allege that Naples acknowledged that while "it had paid some of that [permit] amount . . . it continued to be $302 in arrears." (CERF Response, 19:4-13). While CERF's attempt to blindside Naples in its Petition for Rehearing with unsupported, unauthenticated information led the Ninth Circuit to investigate further, that unauthenticated assertion does not withstand the scrutiny of the record. In fact, that record confirms that Naples paid the entire amount of the permit fee at the first available instance. (*See* Initial Submission, 11:13-13:11).

As Naples painstakingly detailed, confusion arose from nothing more than a clerical error made by the Board but that Naples cured. (Initial Submission, 11:3-13:11). The record clearly demonstrates, however, that Naples timely made every payment the Board requested. It was not and could not have been Naples' fault that the Board initially requested what turned out to be an incorrect permit fee. CERF's insinuations demonstrate its own desperation, not Naples' failure to pay the permit fee. On this record, there is no "open question of whether Naples has paid the fees due on the permit that it eventually obtained." (CERF Response, 15:5-8.)

C. **Naples Has Demonstrated *In Every Way Possible* that It Will Continue to Obtain and Pay for an NPDES Permit for Every Year that It Hosts the Event**

1. The 2024 Event

Analysis of the 2024 event is not properly encompassed by this Court's inquiry. As Naples demonstrated in its Initial Submission, it did not host the 2024 event, but instead transferred the permit to the Boys & Girls Clubs of Long Beach ("Boys & Girls Club"), historically one of the many beneficiaries of the monies raised in connection with the event. The Boys & Girls Club subsequently organized and hosted an event on September 1, 2024. (Initial Submission, 13:13-18).

Neither CERF nor the Board disputes the Boys & Girls Club's payment of the 2024 permit fee. Accordingly, the 2024 event is not properly before the Court. Details surrounding the Boys & Girls Club's payment of the 2024 permit fee therefore have no bearing on the issue of Naples' willingness and intent to obtain permits for shows that it hosts in the future. (Initial Submission, 13:12-13:1).

Undaunted, CERF cannot resist at least a couple cheap shots. CERF argues that Naples "failed to satisfy even the most basic requirements of its NPDES permit" because it "did not make a 'complete submission' for its monitoring and reporting requirements for *its 2024 fireworks show*." (CERF Response, 20:3-6) (emphasis added). There are so many problems with this assertion that it is difficult to know

where to begin.

As emphasized, Naples was neither the permittee nor the organizer of the 2024 show. The 2024 event was not *its* show. Therefore, it had *no* obligations related to that event. Perhaps more importantly as analyzed below, this lawsuit is not about Naples' compliance with any permit. Repeating the obvious, CERF seeks relief only for the discharge of pollutants without a permit. On any level, allegations relating to the 2024 show are inappropriate.

2.  The 2025 Event and Beyond

Unable to resist, CERF also attempts to denigrate Naples' ongoing permitting acquisition efforts by offering unsupported allegations that Naples is somehow attempting to "slough off its legal obligations" by transferring the permit to Boys & Girls Club in 2024 - while in the same breath acknowledging that the permit was then transferred back to Naples. (*See* CERF Response, 18:4-16.) CERF pounces on this fact in a weak attempt to imply bad faith on the part of Naples – missing the point entirely. *Naples took the permit back*. CERF's strained argument only underscores that Naples' actions demonstrate a continued effort to ensure that appropriate permits are in place whenever it is the host of the event. In any event, the simple response to this *unsupported* accusation is that Mr. Morris has asserted under oath that he will promptly pay the 2025 event fee when he receives an invoice, and "Naples will continue to timely pay permitting fees, including the NPDES permit fee, so long as Naples remains involved in organizing and permitting a fireworks show. (Initial Submission, 14:2-9).

Perhaps CERF's cheapest shot (it is difficult to choose among many) is its citation to a "Long Beach Post" internet citation along with its citation to Mr. Morris' Facebook page. (CERF Response, 18:13-26.) While the purpose of these citations is confusing at best, presumably they were included to show Naples' continued noncompliance with permit terms. (". . . Naples hasn't even closed up shop like in *Laidlaw* or *City of Erie* . . . or made a permanent change to its unlawful activity.")

COLLIER WALSH NAKAZAWA LLP
180 E. Ocean Blvd, Suite 500
Long Beach, California 90802
Telephone (562) 317-3300

(CERF Response, 18:16-18.)

Once again, objections to these citations must be prioritized. Primarily, CERF either knows or is charged with knowing that a party generally may not add to or enlarge the record on appeal to include material that was not before the District Court. *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003). And while the District Court has invited the parties to file declarations (CERF's not yet being due), unsupported, unauthenticated citations to internet sources are clearly inappropriate. As Rutter notes, the Court may take one or more appropriate actions, including the imposition of sanctions against a party who violates this rule. (*Federal*) *Ninth Circuit Civil Appellate Practice,* Nelson, Goeltz & Watts (The Rutter Group 2023), §§ 215, 255 at pages 4-27, 4-41.

Aside from CERF's failure to follow evidentiary rules, this latest citation again suffers from a fatal conceptual defect. Naples' future performance under review relates to its promise to seek future permits. Notwithstanding CERF's attempt to recharacterize the issue before the Court, Naples' compliance with those permits is beyond the purview of this inquiry. In that regard, the *entire* record before the Court---its record of compliance, its testimony at trial, and the declarations filed in these supplemental proceedings--- confirms that Naples will continue to comply with its obligation to obtain future permits when necessary.

### III.  CERF'S BRIEF ATTEMPTS TO ANSWER THE WRONG QUESTION

The parties are being asked to brief whether it is absolutely clear that Defendant's alleged violations of the Act could not be reasonably expected to occur. Because, as noted on many occasions, the single cause of action contained in CERF's complaint seeks relief only for the discharge of pollutants without a permit, the *only possible* conduct by Naples under investigation is whether it will continue to maintain and pay for an NPDES permit for each year it organizes the event in which fireworks are discharged from a location on or over navigable waters. Notwithstanding the clarity of the prompt, CERF seems intent upon answering the wrong question.

A. **CERF Impermissibly Seeks to Adjudicate whether Naples Has or Will Comply with the Requirements of Each Permit**

1. CERF'S Own Headings Demonstrate the Error in Its Focus

CERF mischaracterizes this case as a "voluntary cessation" case. It employs a five-factor test (without providing authority or attribution for its test) in its "voluntary-cessation analysis." (CERF Response, 10:23-11:4). The question that comes to mind is "voluntary cessation" of what? Whether the record demonstrates (as it does) that Naples will continue to apply for and obtain permits does not invoke any aspect of voluntary cessation. A substantial portion of CERF's brief must therefore be ignored.

2. CERF's Case Selection Is Baffling

It is clear that CERF's brief is driven by a search for the written equivalent of "sound bites." It seeks language that fits its argument even if the underlying cases have nothing to do with this controversy. The results are head scratching.

CERF relies heavily upon *F.B.I. v. Fikre*, 601 U.S. 234 (2024), a case involving the government's application of the "no fly list." (CERF Response, 6, 7, 14). CERF cites *Fikre* in support of the proposition that the Supreme Court rejected the government's retrospective declarations that it would not list Mr. Fikre on the "no fly list" in the future. (CERF Response, 7:16-19). Unlike in this litigation, the government's future compliance with its own internal rules was clearly at issue.

CERF also relies heavily upon a busing case, *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 791 (2007). (CERF Response 7, 14, 21.) *Parents* is essentially an equal protection case, the High Court emphasizing that one form of injury under the Equal Protection Clause is being forced to compete in a race-based system that may prejudice the plaintiff. 551 U.S. at 719. For purposes of the instant litigation, the Supreme Court again focuses upon future *compliance*, emphasizing that "voluntary cessation does not moot a case or controversy unless 'subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably expected to recur.'" *Id.* (citing *Friends of the Earth Inc. v*

*Laidlaw Environmental Services (TOC) Inc.*, 528 U.S. 167, 189 (2000)). Yet, it is all too clear that CERF's complaint did not raise compliance issues.

Other cases CERF discusses are equally inapposite. *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150 (9th Cir. 2006) (CERF Response 5, 16) is a copyright infringement case. *Knox v. Service Employees Intern. Union, Local 1000*, 567 U.S. 298 (2012) (CERF Response, 14) is a union dispute addressing whether the union was required to give additional "*Hudson*" notice prior to exacting compulsory union fees. Finally, *Board of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195 (9th Cir. 2019) (CERF Response, 11) examined whether the state's invalidation of a statute rendered a lawsuit challenging the statute moot. As analyzed immediately below, CERF's authorities that attempt to analyze the Act fare no better because they analyze compliance cases rather than cases involving the discharge of a pollutant without a permit.

    3.    <u>CERF's Mootness Argument Relies upon *Compliance* Cases Rather than Cases Analyzing the Discharge of Pollutants without a Permit</u>

CERF's "sound bites," the cases in which it quotes its purportedly favorable language, invariably involve the issue of compliance, rather than whether a defendant discharged a pollutant without a permit. The distinction is critical. In compliance cases, a party's subsequent behavior, or compliance, might be relevant. On this appeal, the *sole* focus, at least with regard to Naples' future conduct, is whether Naples will continue to have an NPDES permit in place if it intends to launch fireworks from a location on or over navigable waters.

Consider CERF's "headline" cases. For instance, CERF relies heavily upon *Nat. Res. Def. Council v. Cnty. of Los Angeles*, 840 F.3d 1098 (9th Cir. 2016), proclaiming that "the Ninth Circuit has held, time and again, that obtaining an NPDES 'permit, in and of itself, does not moot a case.'" (CERF Response, 5:19-22). Of course it didn't, *in that case*. The very first sentence of that opinion notes that "Plaintiffs filed suit . . . alleging that [Defendants] were discharging polluted stormwater *in violation*

*of the terms of their [existing" NPDES] permit . . . .".* NRDC, 840 F.3d at 1099 (emphasis added). CERF's complaint contains no such claim.

Analysis of other of CERF's key authorities renders an identical result. For instance, CERF also relies heavily upon *Ecological Rts. Found. v. Pacific Lumber Co.*, 230 F.3d 1141 (9th Cir. 2000) (CERF Response, 9, 11, 13, 21), asserting the identical argument (that the issuance of a permit does not moot "alleged violations.") (CERF Response, 11:20-23). That might make sense in *Ecological Rts.* where Plaintiff brought its lawsuit alleging *violations* of the Act. 230 F.3d at 1144.[1] In the context of CERF's lawsuit, it does not. There is no future conduct to monitor other than Naples' continued promise to maintain an NPDES permit for fireworks events in Alamitos Bay, which is firmly established by this record.

In a similar vein, CERF cites *San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153 (CERF Response 11, 12, 18, 21), also a "compliance case,"[2] arguing that Naples "is entirely free to return to its old ways" or might decline to comply with the terms of its permit. (CERF Response, 21:6-9). As for Naples' continued future permit acquisition, the record conclusively determines that Naples will continue to maintain the required permit in support of its fireworks events. Whether Naples might fail to comply with the terms of its permit is beyond the scope of this remand.

Even CERF's analysis of its "no fly zone" case (*Fikre*) suffers from the same

---

[1] Christopher Hinderyckx, a member of one of the plaintiff environmental entities, alleged that he no longer enjoyed swimming in Yager Creek because Defendant had polluted the creek. 230 F.3d at 1144. Plaintiffs brought the action under the "citizen suit" provision, claiming violation of the operative General Permit. *Id.* at 1145.

[2] "BayKeeper appeals the district court's grant of summary judgment in favor of ["Tosco"] in its suit *alleging violations* of the [Act]." 309 F.3d at 1155. Although the case focused primarily upon the sufficiency of the citizen plaintiff's notice, *Id.* at 1157, BayKeeper's complaint alleged "wind-blown violations" from wind blowing petroleum coke from the piles into the slough, as well as storm water pollution. *Id.* at 1158.

malady. CERF emphasizes that the Supreme Court rejected the government's declarations as moot because of issues of future compliance. (CERF Response, 7:16-21). While the government's future compliance (placing Mr. Fikre back on the no fly list, for instance) may have been relevant, there are no issues of Naples' future compliance, other than its acknowledged promise to continue to maintain NPDES permits for all future shows.

### 4. CERF's Assertion that This Case Cannot Be Moot Because Naples Defended Itself Is Preposterous

Finally, CERF conveniently argues that this case cannot be moot because Naples continues to defend its own actions, including by demonstrating that it will continue to maintain necessary permits. (CERF Response, 14:1-16). When Naples becomes liable for defending its own position, CERF will have managed to turn the world upside down.

In addition, it bears repeating that Mr. Morris merely runs and operates a restaurant. Naples is neither a hazardous waste incinerator nor a water treatment plant that spawned and formulated the Supreme Court's landmark decision in *Laidlaw*. 528 U.S. at 175-176. That distinction should not be lost in the context of CERF's sound bites. Nor should the Court lose sight of the fact that the Majority left for another day the "hotly contested issue" concerning whether fireworks are even covered by the Act. *Coastal Env't Rights Found. v. Naples Rest. Grp., LLC*, 115 F.4th 1217, 1225, fn. 2. Unlike stormwater runoff and industrial pollution, this case presents an entirely novel issue that has been hiding in plain sight since the Act was promulgated over 50 years ago. Naples should not be punished for declining to accept CERF's untested position at face value.

## IV. CONCLUSION

As Naples' initial submission demonstrates and this response confirms, it is absolutely clear that its alleged violations of the Act *cannot reasonably be expected to occur,* Naples is therefore entitled to the following relief: (1) the petition for

rehearing must be denied; (2) the appeal must be dismissed as moot; and (3) the complaint must be dismissed.

Dated: July 22, 2025            COLLIER WALSH NAKAZAWA LLP

By: _____
Joseph A. Walsh II
Anusha E. Pillay
Caroline J. Wilson
Attorneys for NAPLES RESTAURANT GROUP, LLC and JOHN MORRIS